UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISON

VINCENT E. FOSCATO, et al.,

    Plaintiffs,

v.

CHAPARRAL BOATS, INC., et al.,

    Defendants.

Case No. 2:21-4240-NKL

## ORDER

Defendant Xtreme Marine Corporation moves to dismiss the claims against it for lack of personal jurisdiction. Doc. 24. For the reasons stated below, the Court grants Xtreme's motion.

### I. BACKGROUND

#### A. Factual Background

Plaintiffs allege that they were passengers in Defendant Gregory S. Lajuene's boat when he negligently caused the underside of the boat to strike a bridge pillar. *See* Doc. 9 (Amended Complaint), at ¶ 2. The collision destabilized the boat's hard top tower, which then fell and injured Plaintiffs. *Id.* Xtreme manufactured the hard top tower. Defendant Chaparral Boats, Inc. attached the tower to the hull of its boat and sold the completed boat to a dealer, Premier 54 Motorsports. Premier 54 then sold the boat to Lajuene.

#### B. Procedural Background

Plaintiffs sued Lajuene and Chaparral in Missouri state court. Doc. 1. The case was removed to this Court. *Id.* Plaintiffs then filed an Amended Complaint adding Xtreme as a

defendant. Doc. 9. Xtreme filed a motion to dismiss, arguing that the Court does not have personal jurisdiction over it. Doc. 24.

### C. Jurisdictional Allegations and Facts

Plaintiffs' amended complaint alleges that: Xtreme is incorporated in Delaware with a principal place of business in Tennessee; Chaparral is incorporated in Alabama with a principal place of business in Georgia; Lajuene is domiciled in Texas; Plaintiffs are domiciled in Wisconsin; and "this Court has personal jurisdiction over all parties, because, among other things, Defendants Chaparral and Xtreme designed, manufactured, and sold or caused to be sold the boat with its defective hard top tower in Missouri, and the accident at issue occurred in Missouri." Doc. 9, ¶¶ 6-9. In response to Xtreme's Motion to Dismiss, Plaintiffs further allege that Xtreme sold the towers through Chaparral's dealers and attempted to fix a defect in Lajuene's boat by sending a replacement tower to Missouri with an instruction manual. Plaintiffs' attorney submits a declaration stating that Chaparral engaged Xtreme to design and build a tower specifically for Chaparral's boats, that Chaparral then sold the boats through its network of authorized dealers, and that Premier 54 replaced the tower with a new tower that Xtreme manufactured. Doc. 31-1 (Richard M. Elias Declaration), ¶¶ 3, 4, 9.[1]

In support of its motion to dismiss, however, Xtreme submits a declaration from Anthony D. Williams, vice president of Patrick Industries, which provides operational oversight of Xtreme. Doc. 24-1. Williams, who states he is personally familiar with the nature and geographic scope of Xtreme's business, declares that: Chaparral and Xtreme are owned and operated independently;

---

[1] Xtreme argues that the Court cannot consider the declaration because it is hearsay and lacks a reliable foundation. The Court will consider the statements in the declaration without deciding the hearsay issue because, as discussed below, even considering those facts, the Court concludes that it lacks personal jurisdiction.

Xtreme is not registered with the Missouri Secretary of State to conduct business; Xtreme does not have an agent for service of process in Missouri; Xtreme does not file a tax return with Missouri; Xtreme does not have a Missouri mailing address or telephone number; Xtreme does not advertise in Missouri, other than maintaining a generally available website where purchases cannot be made; Xtreme does not own or lease property in Missouri; Xtreme does not operate or maintain any facilities or offices in Missouri; Xtreme has no agents or employees in Missouri; Xtreme does not have any dealers or distributors in Missouri; Xtreme does not have any shareholders in Missouri; and Xtreme does nothing to specifically target Missouri. *Id.* ¶¶ 2, 4-17. To the best of Williams' knowledge, Xtreme has never been sued in Missouri before. *Id.* ¶ 12. Further, Williams declares that Xtreme manufactured the towers in Tennessee and sold them exclusively to Chaparral in Georgia. *Id.* ¶¶ 21-22. Chaparral then attached the towers and sold the boats through its own sales channels and distribution networks. *Id.* ¶ 27. Xtreme played no role in determining where Chaparral sold or advertised the boats. *Id.* ¶ 28. In a supplemental declaration, submitted in support of Xtreme's reply, Williams states that Xtreme communicated about the tower repair only with Chaparral, and Xtreme manufactured 50 tower repair kits with instruction manuals that were sold exclusively to Chaparral in Georgia. Doc. 38-1, ¶¶ 4, 8-10. Williams reaffirmed that Xtreme did nothing to encourage Chaparral to sell its towers to any location. *Id.* ¶¶ 11-19.

## II.  LEGAL STANDARD

"The requirement of personal jurisdiction represents an individual liberty interest that derives from the Due Process Clause." *Vallone v. CJS Sols. Group, LLC*, 9 F.4th 861, 864 (8th Cir. 2021) (internal quotation omitted). Plaintiffs have the burden of establishing that the Court has personal jurisdiction over Xtreme. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011). "The evidentiary showing required at the prima facie stage

is minimal." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). However, a party's assertion of jurisdiction cannot "be supported by the pleadings alone"; rather, the party must provide evidence opposing the motion to dismiss. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004).

For the Court to exercise personal jurisdiction in this case, Missouri's long-arm statute must apply, and the Due Process Clause must permit the exercise of personal jurisdiction. *Smith v. Truman Rd. Dev., LLC*, 414 F. Supp. 3d 1205, 1215-16 (W.D. Mo. 2019). However, where "the exercise of personal jurisdiction is not permitted by the Due Process Clause," "it is not necessary to consider the application of Missouri's long-arm statute . . . ." *Everett v. Bombardier-Rotax*, No. 2:14-CV-04033-NKL, 2014 WL 3809199, at *2 (W.D. Mo. Aug. 1, 2014); *see also Viasystems, Inc.*, 646 F.3d at 594 ("We need not decide whether these actions . . . suffice to place it within the bounds of Missouri's long-arm statute, because it is clear that the cited activities are not sufficient to surmount the due-process threshold.").

"The canonical opinion in this area remains *International Shoe [Co. v. Washington*, 326 U.S. 310 (1945)], in which [the Supreme Court] held that a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 923 (2011)).

Personal jurisdiction can be specific or general. *Daimler AG*, 571 U.S. at 126. Plaintiffs here argue only that the Court has specific jurisdiction over Xtreme. For the Court to have specific jurisdiction, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the

benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). A party must reasonably anticipate being haled into court in the forum as a result of this conduct. *Viasystems, Inc.*, 646 F.3d at 594 (internal citation omitted) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Only Xtreme's actions can be considered, and personal jurisdiction cannot be based on the unilateral activity of another. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417 (1984).

## III. DISCUSSION

The Eighth Circuit has created a five-factor test to determine whether there are sufficient minimum contacts to confer jurisdiction: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Johnson*, 614 F.3d at 795. The Court gives "significant weight to the first three factors, while the fourth and fifth factors are secondary." *Dever*, 380 F.3d at 1074.

### A. Minimum Contacts

#### 1. Nature and Quality of Contacts with Missouri

Plaintiffs argue that the Court has personal jurisdiction over Xtreme because (1) Xtreme designed the tower for the United States market and then sold the tower through Chaparral dealers into Missouri; and (2) Xtreme sent a replacement tower with instructions to Missouri after its original tower broke. The Court considers these purported bases in turn.

##### a. Whether Xtreme's Sale of the Towers to Chaparral Created Contacts with Missouri

In the face of Plaintiffs' allegation that Xtreme sold the tower into Missouri through Chaparral dealers, Xtreme has provided evidence that Xtreme exclusively sold the towers to

5

Chaparral in Georgia, that Xtreme and Chaparral are independent companies, and that Xtreme played no role in determining where Chaparral sold the finished boats. *See supra* Section I.B.2. Plaintiffs' unsupported allegations that Xtreme sold the boat into Missouri, or that Xtreme sold the hard top towers through Chaparral's dealers, are insufficient to controvert Xtreme's evidence to the contrary. *Dever*, 380 F.3d at 1072.

The Eighth Circuit's decision in *Stanton v. St. Jude Med., Inc.,* 340 F.3d 690 (8th Cir. 2003), makes clear that Xtreme's sale of the towers did not create sufficient contacts with Missouri to confer personal jurisdiction. In *Stanton,* the plaintiff sued St. Jude—a Minnesota manufacturer of heart valves—and Spire—a Massachusetts corporation that used its patented ion beam process to apply St. Jude's patented coating to bulk fabric—in federal court in Nebraska. St. Jude shipped the fabric from Minnesota to Massachusetts and then Spire shipped the finished fabric back to St. Jude in Minnesota where St. Jude incorporated the fabric into its products. *See generally id.* St. Jude then distributed its products widely, including in Nebraska. *Id.* Spire had no offices or personnel in Nebraska, nor did it play any role in determining where St. Jude sold the heart valves. *Id.*

The plaintiff characterized the application of the coating as "the addition of a component part to a product" and argued that Spire should "reasonably anticipate being haled into court anywhere in the United States because St. Jude placed a mechanical mitral heart valve which included a component part processed by Spire into the national stream of commerce." *Id.* at 694. The Eighth Circuit rejected this argument, stating, that, even if "Spire knew or should have known that the fabric it processed, which St. Jude used in the manufacture of a heart valve, would end up in the forum state, Stanton made no showing that Spire availed itself in any way of the benefits of the laws of the forum state." *Id.* The Eighth Circuit further explained that "[t]he fact Spire knew

St. Jude distributed heart valves which were coated with St. Jude's product but applied by Spire does not demonstrate that Spire 'purposefully avail[ed] itself of the privilege of conducting activities' in Nebraska." *Id.* (quoting *Hanson*, 357 U.S. at 253).

Here, as in *Stanton*, the evidence shows that the component-part manufacturer played no role in determining where the finished product was sold. "Whatever contacts" Xtreme's boat component "may have had with [Missouri] were the result of the actions of [Chaparral] and not of [Xtreme]." *Stanton*, 340 F.3d at 694. Plaintiffs have failed to show Xtreme purposefully availed itself of the privilege of conducting business in Missouri. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,* 141 S. Ct. 1017, 1025 (2021) (holding that a party must deliberately reach out beyond its border for a court to exercise personal jurisdiction over it).

Plaintiffs attempt to distinguish *Stanton* on the ground that Spire only applied St. Jude's coating to St. Jude's fabric while Xtreme manufactured a component part that was incorporated into the final product. That is a distinction without a difference. *Stanton's* core holding—that a court will not impute the contacts of one company to another—applies regardless of whether the company processed material or sold a component part. *See Falkirk Min. Co. v. Japan Steel Works, Ltd.,* 906 F.2d 369, 375-76 (8th Cir. 1990) (holding the court did not have personal jurisdiction over the component-part manufacturer, even though the manufacturer of the finished product brought two of the component parts into the forum, where there was no showing that the component-part manufacturer purposefully directed its activities towards the forum).

The three Eighth Circuit cases Plaintiffs cite in support of their position, *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610 (8th Cir.1994), *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943 (8th Cir.1998), and *Clune v. Alimak AB*, 233 F.3d 538 (8th Cir. 2000), are distinguishable.

In *Barone*, the plaintiff sued fireworks manufacturer Hosoya in Nebraska. 25 F.3d at 610. Hosoya argued that the court could not exercise personal jurisdiction over it because Hosoya had no office, personnel, or distributors located in Nebraska. *Id.* However, Hosoya used nine distributors in six states (California, Indiana, Missouri, Ohio, Pennsylvania, and South Dakota). One distributor, Richie Bros, resold the fireworks to plaintiffs in Nebraska and 16% of the fireworks Richie Bros bought from Hosoya were resold into Nebraska. *Id.* at 619. The court found Hosoya had sufficient contacts with Nebraska to exercise personal jurisdiction because a seller who heads a distribution network that attempts to serve the forum through regional distributors purposefully avails itself of the benefit of doing business in the forum. *Id.* at 612-14.

In *Vandelune*, a worker who was injured in a grain dust explosion in Iowa brought a products liability action against the British manufacturer of a safety device used in the grain elevator. 148 F.3d at 943. Although the manufacturer in *Vandelune* had no office, agent, employee, property, or advertising campaigns in Iowa, the Eighth Circuit found that there were sufficient contacts to support jurisdiction because the manufacturer designed the product for the United States market, agreed to distribute its product through affiliates located in the United States, put its logo and identifying decals on the product, and directly shipped 619 units to an Illinois distributor who resold 81 units in Iowa. *Id.* at 948.

In *Clune*, plaintiffs sued the manufacturer of a construction hoist from which the decedent fell and died. 233 F.3d 538. The manufacturer's subsidiary used two distributors to sell its construction hoists throughout the United States. *Id*. at 540. Between 20 and 40 of the 700 total hoists were sold in Missouri. *Id.* at 541. The Eighth Circuit found the district court had personal jurisdiction because the company had exclusive distribution agreements with United States distributors, the company's logo was displayed on the products, the company conducted training

seminars in the United States, and a significant number of hoists ended up in Missouri. *Id.* at 543-44. The court further held that "a foreign manufacturer that successfully employs one or two distributors to cover the United States intends to reap the benefit of sales in every state." *Id.* at 544.

In each of these cases, the defendant targeted the forum through a distributor. When a manufacturer utilizes a distributor to sell its product to a market that includes the forum, the manufacturer is purposefully availing itself of the benefits of doing business in the forum. Here, in contrast, Xtreme did not utilize a distributor—it merely sold a component part to a third party who then targeted Missouri. *See Guinness Imp. Co. v. Mark VII Distributors, Inc.,* 153 F.3d 607, 615 (8th Cir. 1998) (finding that the court did not have personal jurisdiction over a manufacturer despite the sale of the manufacturer's products in the forum because the manufacturer had no control over where the distributor sold the manufacturer's products); *Country Mut. Ins. Co. v. Broan-Nutone, LLC*, No. CV 20-2251(DSD/ECW), 2021 WL 2719407, at *3 (D. Minn. July 1, 2021) ("Additionally, A.O. Smith's supply of a component part to Broan in its bathroom fan does not lead to a finding that it 'purposefully avails itself of the privilege of conducting activities' in Minnesota. . . . It is simply not enough for A.O. Smith to supply a component part of a bathroom fan that Broan then sold in Minnesota." (citing, *inter alia*, *Stanton* 340 F.3d at 690)); *Alexander v. Suzuki Motor of Am., Inc.*, No. 4:17CV1942 JCH, 2018 WL 10509497, at *6 (E.D. Mo. May 25, 2018) (holding a component manufacturer was not subject to personal jurisdiction because it took no action to serve the forum); *Ruiz v. TRW Vehicle Safety Sys., Inc.*, No. 3:17-CV-03006-RAL, 2017 WL 4236544, at **6–7 (D.S.D. Sept. 22, 2017) (finding the *Barone* line of cases inapplicable to situations where a component part manufacturer has no control over the distribution of the final product); *Sheely v. Gear/tronics Indus. Inc.*, No. 1:15-CV-00048 SNLJ, 2015 WL 4958083, at *4

(E.D. Mo. Aug. 19, 2015) ("Plaintiffs allege that defendant has contacts with Missouri based on the sale of its products to Snap-On which has dealers and distributors in Missouri. However, any contacts Snap-On may have with Missouri are not imputed to defendant. Snap-On, and not defendant, determines where it will sell the products it purchases from defendants."); *Staple Cotton Co-op. Assoc. v. D.G. & G., Inc.*, No. 106CV0046 TCM, 2007 WL 2409744, at *5 (E.D. Mo. Aug. 20, 2007) ("Like the facts in *Stanton*, there is no evidence that Specpac purposefully availed itself of the laws of Missouri. Rather, it is the action of Flexsol that DG & G wishes to impute to Specpac in order to assert personal jurisdiction over it.").

### b. Whether Creating and Sending the Replacement Towers Created Contacts with Missouri

Although Plaintiffs argue that Xtreme sent a replacement tower with instructions to Missouri after the original tower broke, Plaintiffs' declaration and the attached exhibits show only that Xtreme and Chaparral communicated about the tower repair and that Xtreme created the replacement towers and the instruction manual that ultimately were sent to Premier 54. *See* Doc. 31-1, ¶¶ 6-9, Doc. 31-7. Plaintiffs' submission does not show that Xtreme directed the replacement towers to Missouri. In contrast, Xtreme has provided evidence that the tower repair kits were made in Tennessee and sold and shipped by Xtreme to Chaparral in Georgia, Xtreme communicated about the repair issue exclusively with Chaparral, and no employees of Xtreme ever visited Missouri in connection with the repairs. Doc. 38-1, ¶¶ 3-8. Neither Xtreme's communicating with Chaparral nor Xtreme's receiving replacement requests from and sending replacement towers with instructions to Chaparral in Georgia created contacts with Missouri.

\*   \*   \*

In sum, Plaintiffs have failed to show that Xtreme's sale of the initial or replacement towers created contacts with Missouri.

### 2. Quantity of Contacts and Relationship Between Contacts and Claim

As there are no contacts with Missouri that would satisfy the first factor in the Eighth Circuit's five-part test, there is no question that the second and third factors, which concern the quantity and import of any such contacts with the state, weigh against a finding of minimum contacts.

### 3. State's Interest and Convenience

Even though the existence of sufficient contacts is of primary importance in the personal jurisdiction analysis, the Court must still analyze the remaining secondary factors: the interest of Missouri in providing a forum for its residents and the convenience of litigating in the forum. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592-93 (8th Cir. 2011) (citing *Johnson*, 614 F.3d at 794).

Missouri has an interest in the litigation because the accident occurred in Missouri. *Hall v. W.W. Transp., Inc.,* No. 2:07CV46 JCH, 2008 WL 4642848, at *4 (E.D. Mo. Oct. 17, 2008) (holding Missouri had some interest in the litigation when some of the plaintiffs were Missouri citizens and the accident occurred in Missouri). However, Missouri's interest in the litigation is diminished because none of the parties are Missouri citizens. *O'Grady v. Johnson*, No. CIV 05-2203 JNE/JJG, 2006 WL 2403579, at *7 (D. Minn. Aug. 18, 2006) ("While Minnesota does have a general interest in providing a forum for its residents who have been wronged[,] . . . it has no such interest in providing a forum for litigation brought by a non-resident plaintiff." (citations omitted), *aff'd*, 282 F. App'x 496 (8th Cir. 2008).

Missouri is a somewhat convenient forum because the accident took place in the state and some of the evidence is in Missouri. *Cf. Smith*, 414 F. Supp. 3d at 1219 (stating Missouri was a convenient forum when the evidence and most of the witnesses were located there).

On balance, Missouri's interest in the litigation and the convenience of the forum cannot be said to outweigh Xtreme's dearth of contacts with Missouri.[2] Plaintiffs have failed to establish sufficient minimum contacts to warrant the Court exercising personal jurisdiction. *Eisenhauer v. LG Chem, Ltd.*, No. 4:21-CV-964 RLW, 2022 WL 123783, at *4 (E.D. Mo. Jan. 13, 2022) (holding that the court lacked personal jurisdiction over defendant despite the secondary factors weighing in favor of personal jurisdiction when defendant had insufficient contacts with the forum); *Regenexx, LLC v. Regenex Health LLC*, 446 F. Supp. 3d 469, 478 (S.D. Iowa 2020) ("The fourth and fifth factors 'carry less weight and are not dispositive.'" (quoting *Whaley v. Esebag*, 946 F.3d 447, 452 (8th Cir. 2020))).

### B. Whether Jurisdictional Discovery Is Warranted

Plaintiffs argue that if the current record is insufficient to establish personal jurisdiction over Xtreme, then they should be allowed to perform jurisdictional discovery on at least the following six categories of information: (1) the number of towers on Chaparral's boats that were sold in Missouri versus other states; (2) the revenue Xtreme earned from Chaparral's boat sales in Missouri versus other states; (3) Xtreme's communications with Premier 54, including communications related to the towers' defects, and Xtreme's attempt to correct the defect with a replacement tower; (4) how Xtreme's work instructions on how to replace the tower were delivered to Premier 54; (5) the number of boats sold in Missouri with defective towers and the number of boats that had towers replaced under Xtreme's work instructions; and (6) whether Xtreme sent the replacement towers directly into Missouri.

---

[2] The Eighth Circuit has instructed courts to consider all the available factors, but the Court was not able to identify any case in which the secondary factors overcame a lack of contacts with the forum.

Discovery regarding personal jurisdiction should be permitted when a plaintiff offers "documentary evidence, and not merely speculations or conclusory allegations," regarding a defendant's contacts with the forum state. *In re Mun. Stormwater Pond*, 429 F. Supp. 3d 647, 658 (D. Minn. 2019) (collecting sources); *see also Steinbuch v. Cutler,* 518 F.3d 580, 589 (8th Cir. 2008) (holding the district court should not have denied plaintiff's request for jurisdictional discovery when there was evidence, and not merely speculations or conclusory allegations, that jurisdiction could exist). However, a court can deny a request for jurisdictional discovery when a plaintiff has offered only conclusory allegations. *Id.* at 590 ("[T]he district court did not abuse its discretion by granting a stay of discovery against Disney because Steinbuch failed to rebut its affidavits . . . and offered only speculative and conclusory assertions."); *see also Dever*, 380 F.3d at 1074 n.1 ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."). Here, as discussed above, Plaintiffs have failed to make a *prima facie* case for jurisdiction because they have not established any contacts with Missouri.

Second, the discovery Plaintiffs seek concerns information that either is already known or would not impact the Court's conclusion. Requests 2, 3, 4, and 6 have already been answered by Xtreme's declarations, which show that Xtreme received no additional income after the boats were sold in Missouri; Xtreme sent the replacement towers with instructions to Chaparral; and Xtreme had no communications with Premier 54 regarding the tower replacement, but rather exclusively communicated regarding the repairs with Chaparral, which then sent communicated with Premier 54. Indeed, Plaintiffs' own declaration states that Xtreme created the towers exclusively for Chaparral, which then sold the boats to its dealers. Doc. 31-1, ¶¶ 2-5. *See Everett v. Bombardier-Rotax*, No. 2:14-CV-04033-NKL, 2014 WL 3809199, at *4 (W.D. Mo. Aug. 1, 2014) (denying

jurisdictional discovery when the facts essential to resolving the jurisdictional dispute are neither unknown nor disputed). Even if Xtreme communicated with Premier 54 regarding topics other than the tower replacement, that would not constitute sufficient contacts for personal jurisdiction. *Eagle Tech. v. Expander Ams., Inc.,* 783 F.3d 1131, 1137 (8th Cir. 2015) ("[T]elephone calls, written communications, and even wire-transfers to and from a forum state do not create sufficient contacts to comport with due process such that a foreign corporation could 'reasonably anticipate being haled into court there.'").

Although requests 1 and 5 seek information not currently in the record, the information sought would not change the Court's minimum contacts analysis. Learning the number of Xtreme towers that ended up on Chaparral boats in Missouri, the number of defective towers in Missouri, or the number of towers in Missouri replaced pursuant to Xtreme's work instructions would not change the fact that Xtreme played no role in determining where Chaparral sold the finished boats or sent the replacement towers, and therefore would not alter the Court's conclusion that the facts do not show that Xtreme purposefully availed itself of the privilege of doing business in Missouri. *See Johnson v. United States*, 534 F.3d 958, 965 (8th Cir. 2008) (affirming the denial of the plaintiff's request for additional jurisdictional discovery because the plaintiff failed to explain how the additional facts sought would raise a genuine issue of material fact as to jurisdiction).

To the extent Plaintiffs are trying to find contacts unrelated to the sale or repair of the towers, the Court will not condone a fishing expedition for new contacts. *See Holland Contracting Corp. v. Brunswick Ins. Agency, Inc.*, No. C12-0019, 2012 WL 13184888, at *3 (N.D. Iowa Mar. 5, 2012) (denying request for jurisdictional discovery when discovery was not targeted at fleshing out connections already shown to exist, but instead was a fishing expedition for potential contacts

with the forum); *Viracon, Inc. v. J & L Curtain Wall LLC*, 929 F. Supp. 2d 878, 886-87 (D. Minn. 2013) ("Viracon is merely speculating that such contacts may exist, which will not suffice.").

Plaintiffs' citation to *J H by & through Hartley v. Kawasaki Motors Corp.*, No. 20-06098-CV-SJ-GAF, 2020 WL 9218534, at *1 (W.D. Mo. Dec. 4, 2020), is not persuasive. Although the court in *Kawasaki* ordered jurisdictional discovery on the presence of the component part in the jurisdiction, in that case, there was a question as to whether the defendant component-part manufacturer's "distribution network" was directed at the forum state. Moreover, the defendant in *Kawasaki* did not oppose the plaintiff's request for jurisdictional discovery. *Id.* at **1-7. *Kawasaki* thus is distinguishable.

### C. Whether the Claims Against Xtreme Should Be Dismissed with Prejudice

Xtreme argues that Plaintiffs' claims against it should be dismissed with prejudice. However, a jurisdictional ruling is not a ruling on the merits of a plaintiff's claims; consequently, the dismissal must be without prejudice to refiling by Plaintiffs in an appropriate forum. *Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1216-17 (10th Cir. 2002) ("[T]he district court should not have dismissed the Hollanders' claim against Sandoz, Ltd. with prejudice. Its jurisdictional ruling did not address the merits of the Hollanders' allegations as to Sandoz, Ltd., and, as a result, the claim against Sandoz, Ltd. should have been dismissed without prejudice to filing in an appropriate forum." (collecting sources)); *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1221 (11th Cir. 1999) (holding the district court erred in dismissing claims against a party with prejudice on jurisdictional grounds and instructing the district court to dismiss the claims without prejudice); *Arrowsmith v. United Press *1217 Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) ("A dismissal for lack of jurisdiction . . . does not preclude a subsequent action in an appropriate forum.").

## IV.  CONCLUSION

For the reasons stated above, Xtreme's motion to dismiss, Doc. 24, is granted.  All claims against Xtreme are dismissed without prejudice to their being filed in an appropriate forum.

/s/ Nanette K Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated:  May 3, 2022  
Jefferson City, Missouri